THE STATE OF OHIO ET AL., APPELLEES AND CROSS-APPELLANTS, *v.* HALE; ELLIS ET AL., APPELLANTS; BROWN, CROSS-APPELLEE.

[Cite as State *v.* Hale (1991), 60 Ohio St. 3d 62.]

(No. 90-827—Submitted February 20, 1991—Decided May 29, 1991.)

*Lee I. Fisher,* attorney general, *Nancy J. Miller* and *Nancy Johnston,* for appellees and cross-appellants.

*Liggett Pelanda Co., L.P.A.,* and *Kevin Pelanda,* for appellants and cross-appellee.

MOYER, C.J. Both Ellis and Lucas concede that during the applicable time period, they received compensation that exceeded the number of days they spent either in public hearings (regular meetings) or executive sessions (special meetings). Pursuant to R.C. 4112.03, members of the Ohio Civil Rights Commission ("the commissioners") are entitled to receive payment only "for those days that they have regular or special meetings." Thus, as a matter of law, Ellis and Lucas have been overpaid.

Although Ellis and Lucas concede

that they received compensation to which they were not legally entitled, they contend that, in this case, "principles of equity and justice" preclude recovery. They argue that the State Auditor and other public officials acted in bad faith in conducting the audit of the commission, making the illegal payments to the commissioners, and filing this complaint. Ellis and Lucas further urge that they were unaware that they were being overpaid and that they "conferred equal value for the compensation received." These claims must fail, however, as case law supports our position that appellants' allegations will not defeat the state's right to recover illegally expended public monies. Furthermore, in the instant case, appellants' bad faith claims have no basis or support in the record.

A public official is entitled only to compensation provided by law. As this court said in *State, ex rel. Ferguson,* v. *Maloon* (1961), 172 Ohio St. 343, 347-348, 16 O.O. 2d 205, 207, 176 N.E. 2d 422, 425-426: " 'It is well settled that a public officer is not entitled to receive pay for services out of the public treasury, unless there is some statute authorizing the same. Services performed for the public, where no provision is made by statute for payment, are regarded as a gratuity, or as being compensated by the fees, privileges and emoluments accruing to such officer in the matters pertaining to his office. * * * To warrant payment out of the public treasury, it must appear that such payment is authorized by statute. * * *' " (Citations omitted.)

Furthermore, a public official is entitled only to the amount specified in the statute; the official has no claim to a larger amount. In *Richardson* v. *State, ex rel. Pros. Atty.* (1902), 66 Ohio St. 108, 63 N.E. 593, this court succinctly stated: "It is well settled that the compensation of public officers

cannot be enlarged, by implication, beyond the terms of the statute. * * * [Citations omitted.]" *Id.* at 113, 63 N.E. at 594.

Case law establishes the absolute right of the state to recover funds disbursed in excess of a statutory allowance, even when there is no intent to defraud. In *Richardson, supra,* both the county commissioners and the probate court approved payments to a board member in excess of that allowed by law. In holding that the excess compensation could be recovered, even though prior approval had been obtained, the court said that the county commissioners' allowance of the board member's claim for funds, upon the certificate of the prosecuting attorney and approval of the probate judge, "* * * *cannot operate to protect the person who unlawfully received the money, nor to deprive the county of its right to recover back the money when it has been unlawfully obtained from the treasury.* * * *"* (Citations omitted, emphasis added.) *Id.*

Additionally, public officers cannot claim they are ignorant of the correct amount of their statutorily mandated compensation. Public officials have a duty to know the rate of pay they should receive. Those who fail to do so will have that knowledge imputed to them. In *Jones* v. *Lucas Cty. Commrs.* (1897), 57 Ohio St. 189, 48 N.E. 882, Jones received a $100 payment from the public treasury that was not authorized by statute. Finding that Jones was required to make restitution, the court held: "This fact [that he received excess compensation] it must be presumed the auditor knew. Whether in fact he knew or not, it was his duty to know." *Id.* at 217, 48 N.E. at 887.

Appellants' contention that the state received the benefit of their services and is unable to recover the ex-

cess compensation paid Ellis and Lucas also must ·fail. No legal authorization or justification exists for compensating Ellis and Lucas above the statutory limitation even though they adequately performed their work. *Jones* and *Maloon, supra.*

It becomes apparent that the motives of the state or the knowledge of Ellis and Lucas regarding their rate of recompense form no tenable legal basis to defeat the state's right to recovery. We agree with the trial court judge who accurately stated that "* * * in an action to recover funds, the single and crucial inquiry is whether those who obtained such funds were legally entitled to receive them. The only reasonable conclusion based upon R.C. 4112.03, and the applicable decisions in this area, * * * is that * * * Ellis * * * and Lucas have no legal right to those funds which were erroneously issued to them. Thus the amounts must be repaid."

Ellis and Lucas also contend that the state failed to establish the proper rate of pay for the commissioners, making it impossible for the trial court to reach its conclusion that Ellis and Lucas received overpayments totalling $44,763.48 and $19,830.76, respectively. A subpart of this argument is that the auditor incorrectly included unspecified fringe benefits in computing the amount of the overpayment. These allegations are not supported by the record.

The appellate court found that, based upon their pay range and classification, Ellis and Lucas could earn a minimum of $13.99 per hour and a maximum of $20.87 per hour. Ellis and Lucas testified in their depositions that they were paid at an hourly rate of $13.99. The deposition of Nancy Stir, manager of administrative services for the Ohio Civil Rights Commission, establishes that both Ellis and Lucas were compensated at a rate of $13.99 per hour. Since the statute allows only payments for meeting days, the auditors multiplied eight hours for every day for which they had received verification that the commissioners held a regular or special meeting by the $13.99 hourly·rate to determine the amount the commissioners should have been paid. They then subtracted that figure from the amount the commissioners actually were paid to arrive at the amounts of the overpayments. Similarly, the affidavits of the auditors who calculated the overpayments specifically state the method used by the auditors to compute the fringe benefit amounts. Despite appellants' exhortations to the contrary, the method used to determine the exact amount of the overpayments is well-documented and easily understood.

Finally, appellants claim that this case should be dismissed since the proper party plaintiff is not named in the suit. According to appellants, since the recovery action was brought under R.C. 117.28, the commission should bring the suit.

R.C. 117.28 provides in pertinent part: "Where an audit report sets forth that any public money has been illegally expended, * * * the officer receiving the certified copy of the report * * * may * * * institute civil action in the proper court in the name of the public office to which the public money is due * * * and prosecute the action to final determination." R.C. 117.28 sets forth that "[t]he attorney general may bring the action in any case where the officer fails to do so * * *." In R.C. 117.01, "public office" is defined as "any state agency, public institution, political subdivision, or other organized body, office, agency, institution, or entity established by the

laws of this state for the exercise of any function of government."

The commission does not maintain its own treasury. Any monies recovered for appellants will be returned to the state. The Attorney General is authorized to file suit to recover illegally expended funds. Therefore, both the state and the Attorney General are proper party plaintiffs in this case.

In the trial court, this case was dismissed upon motion for summary judgment by the plaintiffs. No material facts are in dispute: the appellants received excess compensation as a matter of law and the state has the right to recover same. Thus, summary judgment was proper.

Cross-Appeal

The plaintiffs, as cross-appellants, request reinstatement of the grant of summary judgment against cross-appellee, Brown. For the reasons that follow, we agree with the state that granting summary judgment against Brown was proper.

Brown and his staff initiated the payroll information that resulted in the illegal payments to the commissioners. Brown exacerbated the overpayment situation by representing in a letter to the State Auditor that the commission met for sixteen hours of regular meetings and sixty-four hours of special meetings monthly from April through September 1985, when, in fact, they had no more than one regular meeting and one special meeting per month during this time period. At the time he wrote this letter, Brown was aware that the commissioners were to receive pay only for the days on which they held regular or special meetings.

Since he was executive director of the commission, Brown can be held liable for the negligent performance of a ministerial duty, *i.e.,* a duty a public official performs without the exercise of discretion. See *Scot Lad Foods* v. *Secy. of State* (1981), 66 Ohio St. 2d 1, 20 O.O. 3d 1, 418 N.E. 2d 1368. Pursuant to R.C. 4112.04(A)(2), Brown was the commission's "principal administrative officer" and, in that capacity, he was required to correctly report the number of hours the commissioners attended meetings. The active misrepresentations made by Brown in order to continue to pay Ellis and Lucas for days when no commission meetings were held clearly contravenes the wording of the statute.

As a public officer, Brown was entrusted with the care and control of the public fisc. As the court said in *Crane Twp., ex rel. Stalter,* v. *Secoy* (1921), 103 Ohio St. 258, 132 N.E. 851: "It is pretty well settled under the American system of government that a public office is a public trust, and that public property and public money in the hands of or under the control of such officer or officers constitute a trust fund, for which the official as trustee should be held responsible to the same degree as the trustee of a private trust fund." *Id.* at 259-260, 132 N.E. at 851.

Brown, a public officer, negligently performed his duties by endorsing the overpayments made from the public treasury. The reasons he acted in contravention of the statute have no bearing upon his liability. The statute was clear and unambiguous, and Brown assisted Ellis and Lucas in violating the statute. Thus, Brown is jointly and severally liable for the overcompensation received by Ellis and Lucas during the time period covered by the second audit and no material fact remains in dispute.

For the foregoing reasons, we affirm the judgment of the court of ap-

peals in upholding the grant of summary judgment against Ellis and Lucas, and we reverse the judgment of the court of appeals in failing to uphold the grant of summary judgment against Brown.

*Judgment affirmed in part and reversed in part.*

SWEENEY, HOLMES, WRIGHT, H. BROWN and RESNICK, JJ., concur.

DOUGLAS, J., dissents.