**POLICE AND FIREMEN'S DISABILITY AND PENSION FUND,**
**n.k.a. Ohio Police and Fire Pension Fund, Appellant,**

v.

**CITY OF AKRON, Appellee.**

[Cite as *Police & Firemen's Disability & Pension Fund*
*v. Akron*, 149 Ohio App.3d 497, 2002-Ohio-4863.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 20996.

Decided Sept. 18, 2002.

Sarah D. Morrison and Charles R. Saxbe, for appellant.

William Moul, for appellee.

BAIRD, Presiding Judge.

{¶ 1} Appellant, the Police and Firemen's Disability and Pension Fund, now known as the Ohio Police and Fire Pension Fund, appeals from the judgment of

the Summit County Court of Common Pleas, which granted the motion for summary judgment of appellee, the city of Akron. We affirm.

I

{¶ 2} The Police and Firemen's Disability and Pension Fund ("Fund") is a multiple-employer public employee retirement system established by R.C. Chapter 742. The city of Akron ("City") is a participating employer in the Fund. The Fund administers pension, disability, and health care benefits to qualified police and firefighters. The Fund calculates benefits for retired police and firefighters based upon information obtained from the participant's employer.

{¶ 3} Prior to retirement, a member of the Fund may choose either the Cost-of-Living Allowance ("COLA") or the Non-Cost-of-Living Allowance ("Non-COLA") method by which pension benefits are calculated. A different formula is used to calculate benefits depending upon which method of calculation the participant selects. The employer provides the participant's final salary to the Fund in order for the Fund to calculate the benefits. For members selecting the non-COLA method of calculation of benefits, the member's final salary includes compensatory time. This appeal concerns the calculation of pension benefits paid to 68 retired firefighters from the city of Akron Fire Department, each of whom selected the non-COLA method of calculation.

{¶ 4} In September 1998, the Fund contacted the Auditor of State's Office ("AOS") and requested that the AOS perform a special audit to determine the accuracy of the City's calculation of the members' compensatory time. The AOS released its report of the special audit, which covered the period of January 1, 1985 through August 31, 1999. The report stated that the City submitted incorrect amounts of compensatory time for the retired firefighters, which resulted in both over- and underpayments of monthly retirement benefits.

{¶ 5} As a result of the report, the Fund filed a complaint against the City, alleging a cause of action to recover illegally expended public money pursuant to R.C. 117.28, seeking $731,300. The Fund later amended its complaint to include causes of action for negligence, misrepresentation, and breach of duties under R.C. Chapter 742. The actions for negligence and misrepresentation were voluntarily dismissed by the Fund. The City filed a motion for summary judgment on the remaining causes of action.

{¶ 6} On February 19, 2002, the trial court granted the City's motion for summary judgment. The court found that before a suit is brought under R.C. 117.28, an audit report must make a finding for recovery of illegal expenditure. The trial court found that because the report in this case did not make such a finding, the Fund could not satisfy the statute. The court also found that breach

of a duty under R.C. Chapter 742 did not constitute a separate cause of action. This appeal followed.

## II

### Assignment of Error No. 1

{¶ 7} "The trial court erred as a matter of law in concluding that the audit report issued by the State Auditor did not meet the statutory requirements of R.C. 117.28 for the Ohio Police & Fire Pension Fund to bring an action against the City of Akron."

{¶ 8} In its first assignment of error, the Fund challenges the summary judgment entered in favor of the City on the Fund's R.C. 117.28 claim. The Fund argues that the trial court erred when it found that the audit report did not set forth a finding for recovery of illegal expenditure, and, consequently, the Fund could not bring suit against the City pursuant to R.C. 117.28.

{¶ 9} We begin by noting that an appellate court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party. *Viock v. Stowe–Woodward Co.* (1983), 13 Ohio App.3d 7, 12, 13 OBR 8, 467 N.E.2d 1378.

{¶ 10} Pursuant to Civ.R. 56(C), summary judgment is proper if:

{¶ 11} "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 12} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.

{¶ 13} While the City disputes the Fund's interpretation and definition of compensatory time, the only issue before this Court relevant to this assignment of error is the construction of R.C. 117.28.

{¶ 14} When a statute's language is plain and unambiguous, this court applies the statute as written and makes no further inquiry either into the

legislative intent or the consequences of the trial court's construction. *State v. Hurd* (2000), 89 Ohio St.3d 616, 618, 734 N.E.2d 365. The words and phrases in a statute are to be given their plain, ordinary meaning and are to be construed "according to the rules of grammar and common usage." R.C. 1.42; *Petro v. N. Coast Villas Ltd.* (2000), 136 Ohio App.3d 93, 97, 735 N.E.2d 985. A statute cannot be extended by construction to persons or things not falling within its terms, although they may appear to be within the reason and spirit of the statute. *Pepper Pike v. Landskroner* (1977), 53 Ohio App.2d 63, 76, 7 O.O.3d 44, 371 N.E.2d 579.

{¶ 15} R.C. 117.28 provides:

{¶ 16} "Where an audit report sets forth that any public money has been illegally expended, * * * the officer receiving the certified copy of the report pursuant to section 117.27 of the Revised Code may, within one hundred twenty days after receiving the report, institute civil action in the proper court in the name of the public office to which the public money is due or the public property belongs for the recovery of the money or property and prosecute the action to final determination." [1]

{¶ 17} The plain language of the statute dictates that before a civil action may be instituted under this provision for the recovery of funds, the report must set forth that public money has been illegally expended. The Fund argues that the audit report sets forth the City's illegal expenditure of public funds. The City argues that the audit report fails to make such a finding.

{¶ 18} The AOS conducts audits of public offices as provided in R.C. Chapter 117. As part of that duty, the AOS determines whether any public money has been illegally expended, any public money collected has not been accounted for, any public money due has not been collected, or any public property has been converted or misappropriated. See R.C. 117.24. The AOS then compiles an audit report, which includes such findings. R.C. 117.25.

{¶ 19} "[T]he Auditor of State is required 'to determine whether any public money has been illegally expended.'" 1994 Ohio Atty.Gen.Ops. No. 94–048, quoting 1976 Ohio Atty.Gen.Ops. No. 76–017, at 2–52. "[T]he Auditor of State [determines], in the first instance, whether an illegal expenditure has occurred after the facts and circumstances of the expenditure have been fully and thoroughly investigated." 1987 Ohio Atty.Gen.Ops. No. 87–074, citing 1976 Ohio Atty.Gen.Ops. No. 76–017, at 2–52. Once the AOS determines that public money

---

1. Although not relevant to this appeal, R.C. 117.28 also provides that a cause of action may be instituted when the audit report sets forth "that any public money collected has not been accounted for, or that any public money due has not been collected, or that any public property has been converted or misappropriated[.]"

has been illegally expended, the AOS incorporates that finding into an audit report. 1994 Ohio Atty.Gen.Ops. No. 94–048. Furthermore, "the Auditor of State is required to make a finding for recovery if he determines that public money has been 'illegally expended.'" Id.

{¶ 20} In support of its motion for summary judgment, the City submitted a copy of the audit report and the deposition transcript of Daniel Schultz, a Chief Deputy Auditor of State. The audit report describes the procedures used for the special audit. The AOS met with the City to determine the procedures followed with regard to compensatory time accumulation, usage, and maintenance of balances. The AOS reviewed labor agreements and calculated the compensatory time earned by the retirees in question. The AOS's calculations were then used to calculate the retirees' benefits based upon a spreadsheet provided by the Fund. The AOS compared these calculations of benefits with the amount of benefits actually received.

{¶ 21} Schultz supervised the preparation of the final audit report in this case. Schultz described the procedure used by stating, "[W]e accumulated raw data and provided that data to the Fund. They performed the calculation and then that calculation was compared to what was actually paid to come up with the variance." He further stated that the AOS did not evaluate the calculation methods incorporated into the spreadsheet that was used by the Fund to calculate the monthly benefits of the retirees.

{¶ 22} He testified that the audit report in this case contains no finding for recovery under R.C. 117.28, because the AOS did not believe that there was anything in the report that qualified for a finding for recovery. He further explained that the AOS "did not believe that this fact pattern met the statutory definition of a finding for recovery. * * * [T]here really wasn't anyone to issue a finding for recovery against in our opinion." He stated that when the AOS issues a finding for recovery of illegally expended funds, it is labeled as such.

{¶ 23} In opposition, the Fund submitted a copy of an AOS internal memo, detailing a pre-engagement meeting between the AOS and the City, a copy of the audit report, and a copy of a draft version of the audit report. The pre-engagement memo sets forth the procedure for the audit, stating:

{¶ 24} "The Auditor of State's Office communicated to the City that a finding for recovery would not be issued by the AOS. Instead, it was explained that the AOS would compute the 3–year base salary for the 58 retirees specified by the Police and Firemen's Disability and Pension Fund. The information will then be submitted to the [Fund] by the Auditor of State for the purpose of computing monthly retirement payments. Any liability arising due to the overpayment of retirees will be resolved between the Police and Firemen's Disability and Pension Fund and the City of Akron."

{¶ 25} The draft version of the audit report states that "the Fund should take necessary steps to recover the amount of overpayments thus far from the City of Akron." However, this statement was not made a part of the final report.

{¶ 26} The report recommends that both parties improve communications and record-keeping procedures. For instance, the report notes that, on occasion, the Fund determined that the information certified by the City was inaccurate and that the Fund used a different form in which to calculate monthly benefits. In those instances, the Fund did not formally notify the City of the discrepancy. The report also recommends that the Fund amend one of the forms used such that it reflects the proper time frame for which compensatory time is reported. The current form indicates that the relevant time period is a retiree's final 36 months of employment, when the form should cover the time period of the 36 months during which the retiree earned his or her highest compensation, pursuant to R.C. 742.3716.

{¶ 27} The report concludes by cautioning the Fund on how to proceed in adjusting the monthly benefits of the retirees. "When determining what course of action should be taken to remedy these over and under payments, the Fund should recognize the sensitivity of this matter since many, if not all, of the retired individuals have adjusted their life styles to be commensurate to their retirement income. Therefore, regardless of the course of action that is selected by Fund management, many individuals could be forced to modify a life style they have based on retirement benefits they feel they have earned."

{¶ 28} In this case, the report contains no language explicitly labeling a "finding for recovery," nor does the report specifically state that there has been an illegal expenditure. Instead, the report merely states that the City did not submit the correct amount of leave balances and, "[w]hen used by the Fund to calculate pension benefits to be received by retirees, this discrepancy resulted in over and under payments of monthly pension benefits to retirees." There is nothing in the report to indicate that the under- or overpayments were "illegal expenditures."

{¶ 29} Moreover, given the description of the procedures used for the special audit, it seems clear that the AOS did not intend to issue a finding of recovery in this case. The AOS did not perform the calculations independently; the AOS relied on the accuracy of the formulas in the Fund's spreadsheet. The AOS describes the actual procedure undertaken. The report states:

{¶ 30} "This engagement to apply agreed-upon procedures was performed in accordance with standards established by the Ohio Auditor of State's Office. The sufficiency of the procedures is solely the responsibility of the specified users of this report. Consequently, *we make no representations regarding the sufficiency*

*of the procedures described* \* \* \* *either for the purpose for which the report has been requested or for any other purpose.*" (Emphasis added.)

{¶ 31} The report continues by stating that it is "intended for the use of the specified users listed above and should not be used by those who have not agreed to the procedures and taken responsibility for the sufficiency of the procedures for their purposes."

{¶ 32} Furthermore, upon review of the report's "recommendations," cautionary statements on how to proceed, and statement that the parties should resolve the matter, it is clear that the audit report is not one that sets forth an illegal expenditure. R.C. 117.33 expressly provides that "[n]o claim for money or other property found to be due to any public treasure or custodian of public money in any report of the auditor of state \* \* \* shall be abated or compromised, either before or after the filing of civil action, by any legislative or executive action or by order of any court unless the attorney general gives his written approval." If the report did set forth an illegal expenditure, any resolution between the City and the Fund concerning the repayment of such would be contrary to R.C. 117.33.

{¶ 33} The Fund relies upon *State v. Hale* (1991), 60 Ohio St.3d 62, 573 N.E.2d 46, for the proposition that it is not necessary for the audit report to specifically make a "finding of recovery for an illegal expenditure." However, that case is distinguishable from the case at bar. In *Hale,* an action was commenced pursuant to R.C. 117.28 to recover funds paid to civil rights commissioners in excess of that provided by statute, R.C. 4112.03. The suit was filed against the commissioners, who were paid in excess of that authorized by statute, for the recovery of the funds, as well as against the executive director of the commission, who was found negligent and jointly and severally liable for the amounts by the Auditor. *Hale* does not address the issue before us. In *Hale,* it was clear that the report set forth a finding for recovery of illegal expenditure. Moreover, the suit in *Hale* was brought against those who actually received the money and against the director, whom the Auditor specifically found to be negligent in the execution of his duties. We have no such findings here, nor is the Fund seeking recovery of the money from the individuals who actually received the funds. Therefore, the Fund's reliance on *Hale* is misplaced.

{¶ 34} The Fund cannot prevail in a claim brought pursuant to R.C. 117.28 because the report does not set forth an illegal expenditure. Accordingly, the trial court did not err when it granted the City's motion for summary judgment on its claim pursuant to R.C. 117.28. The Fund's first assignment of error is overruled.

### Assignment of Error No. 2

{¶ 35} "The trial court erred as a matter of law in concluding that R.C. Chapter 742 does not create an independent cause of action for the Ohio Police

[and] Fire Pension Fund against employers who fail to comply with the reporting requirements of [R.C.] Chapter 742."

 {¶ 36} In its second assignment of error, the Fund argues that the trial court erred when it found that R.C. Chapter 742 does not create an independent cause of action for the breach of any of the duties contained therein, and granted summary judgment in favor of the City on the Fund's cause of action for the City's violation of R.C. Chapter 742. We disagree.

{¶ 37} The Fund is established by R.C. Chapter 742, and the administration of the Fund is governed by that chapter. *Police & Fire Retirees of Ohio, Inc. v. Police & Firemen's Disability & Pension Fund* (1985), 18 Ohio St.3d 231, 231, 18 OBR 289, 480 N.E.2d 482. R.C. Chapter 742 sets forth certain responsibilities of participating employers, participating employees, and the Fund.

{¶ 38} As a preliminary matter, we note that the Fund asserts that the City breached its duties under R.C. Chapter 742 when it reported allegedly inaccurate salary amounts. The Fund cites two sections of R.C. Chapter 742, R.C. 742.33 and 742.34, which encompass the City's duty as employer to make quarterly payments for the employer's contribution to the pension fund. However, the Fund does not cite any subsection of Chapter 742 that creates an independent, statutory cause of action for breach of any of the duties imposed therein, nor has our research uncovered any such provision. Nothing in R.C. Chapter 742 expressly creates a statutory cause of action.

{¶ 39} In determining whether a statutory cause of action may be implied, courts apply a three-part test:

 {¶ 40} "(1) Are the plaintiffs in a class for whose special benefit the statute was enacted? (2) Is there any indication of legislative intent, explicit or implicit, either to create or deny a private cause of action? and (3) Is it consistent with the underlying purposes of the legislative scheme to infer such a remedy for the plaintiffs?" *Nielsen v. Ford Motor Co.* (1996), 113 Ohio App.3d 495, 501, 681 N.E.2d 470.

{¶ 41} R.C. Chapter 742 established the Fund and "provides for the centralized state administration of local contributions to the state fund." *State ex rel. Bd. of Trustees of Pension Fund v. Bd. of Trustees of Relief Fund* (1967), 12 Ohio St.2d 105, 106, 41 O.O.2d 410, 233 N.E.2d 135. The purpose of the Fund is to provide disability benefits and pensions to individual members, their surviving spouses, children, and dependent parents. R.C. 742.02. Upon retirement, members receive pension benefits according to their length of service and average annual salaries. R.C. 742.37. Similarly, a member eligible for disability benefits is paid those benefits in accordance with R.C. 742.39. R.C. Chapter 742 was

enacted for the benefit of the individual members of the Fund and their beneficiaries.

{¶ 42} The Fund argues that, while there is no express provision in R.C. Chapter 742 creating a statutory cause of action, "there is nothing in the statute suggesting that such a cause of action is to be denied." Several provisions of R.C. Chapter 742 provide for redress or expressly provide a statutory cause of action. For instance, if an employer is late in making payments of the employer's contribution to the retirement fund mandated by R.C. 742.33 and 742.34, the amounts due and unpaid after sixty days are subject to a penalty, and interest may be charged on the late payments. R.C. 742.35. R.C. 742.46 provides:·

{¶ 43} "The granting of a benefit or pension to any person under sections 742.01 to 742.61 of the Revised Code, vests a right in such person to obtain and receive the amount of such benefit or pension granted to the person subject to sections 742.01 to 742.61 of the Revised Code.

{¶ 44} "Such right may be enforced by an action in mandamus instituted in the court of common pleas in the county in which the person granted such benefit or pension resides." R.C. 742.46.

{¶ 45} By enacting these two provisions, the legislature expressly provided for an action in mandamus by persons receiving benefits, and for penalties to be imposed against employers who fail to make timely payments of the employer's contributions. "An accepted tenet of statutory interpretation is that a legislature would have included a provision in a law had it intended to do so." *N. Olmsted v. Police & Firemen's Disability & Pension Fund Bd. of Trustees* (1984), 19 Ohio App.3d 165, 167, 19 OBR 271, 483 N.E.2d 162. Accordingly, if the legislature intended to create a statutory cause of action for violation of duties imposed by R.C. Chapter 742, the legislature would have included such a provision within that chapter.

{¶ 46} Although R.C. 2744.02 addresses limits to a political subdivision's liability, we find it persuasive as well. R.C. 2744.02 provides:

{¶ 47} "In addition to the circumstances described in division (B)(1) to (4) of this section,[2] a political subdivision is liable for injury, death, or loss to person or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and

---

2. R.C. 2744.02(B)(1) through (4) generally provide that a political subdivision is liable for the negligent operation of a motor vehicle by its employees acting in the scope of their employment, for negligent acts by employees with respect to the subdivision's proprietary functions, for the subdivision's failure to keep public roadways and grounds open and in repair, and for the negligence of employees occurring within or on the grounds of a building used in connection with the performance of a governmental function.

5591.37 of the Revised Code. *Liability shall not be construed to exist under another section of the Revised Code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued.*" (Emphasis and footnote added.) R.C. 2744.02(B)(5).

{¶ 48} In granting the City's motion for summary judgment on the Fund's claim for breach of R.C. Chapter 742, the trial court reasoned:

{¶ 49} "The City of Akron is alleged to have breached [a duty imposed by statute] by failing to provide correct information for the Fund. The Fund relied on that information in calculating benefits and as such made overpayments to their loss. These are the elements for a cause of action in negligence and/or misrepresentation."

{¶ 50} We agree. These allegations could form the basis of a different cause of action, such as one of negligence or misrepresentation. However, the Fund had voluntarily dismissed these causes of actions, leaving only the causes of action under R.C. 117.28 and Chapter 742. Because R.C. Chapter 742 does not create an independent statutory cause of action for the breach of any of the duties imposed therein, summary judgment was properly granted to the City with respect to the Fund's cause of action for breach of R.C. Chapter 742. The Fund's second assignment of error is overruled.

## III

{¶ 51} Having overruled the Fund's first and second assignments of error, we affirm the judgment of the Summit County Court of Common Pleas.

Judgment affirmed.

CARR and WHITMORE, JJ., concur.