The STATE of Ohio ex rel. Nancy L. COOK et al., Appellants,

v.

SENECA COUNTY BOARD OF COMMISSIONERS et al., Appellees.

[Cite as *State ex rel. Cook v. Seneca Cty. Bd. of Commrs.,* 175 Ohio App.3d 721, 2008-Ohio-736.]

Court of Appeals of Ohio,
Third District, Seneca County.

No. 13–07–26.

Decided Feb. 25, 2008.

722

John T. Barga, for appellants.

Mark Landes and Mark H. Troutman, for appellees.

———

Rogers, Judge.

{¶ 1} Although originally placed on our accelerated calendar, we have elected, pursuant to Local Rule 12(5) of the Third Appellate District, to issue a full opinion in lieu of a judgment entry.

{¶ 2} Plaintiffs-appellants, the State of Ohio ex rel. Nancy L. Cook and others, appeal the judgment of the Seneca County Court of Common Pleas overruling their motion for declaratory judgment, judgment on the pleadings, and/or summary judgment, and granting the motion to dismiss of defendants-appellees, Seneca County Board of Commissioners and others ("the board"). On appeal, appellants assert that the trial court erred by overruling their motion for declaratory judgment, judgment on the pleadings, and/or summary judgment, and by granting the board's motion to dismiss their unauthorized-conduct and breach-of-fiduciary duty claims. Based on the following, we affirm the judgment of the trial court.

{¶ 3} This case arose from a debate over whether the historic Seneca County courthouse should be renovated or demolished. The courthouse was built in 1884 but has not been used in that capacity since 2003. Instead, the clerk of courts and the common pleas court were relocated to an annex adjacent to the courthouse, while the probate and juvenile courts were relocated to a library. The empty courthouse was used for storage.

{¶ 4} During the summer of 2006, the board voted two-to-one to demolish the courthouse and construct a new one.

{¶ 5} In May 2007, appellants filed a complaint against the board, seeking a writ of mandamus and a preliminary injunction and asserting claims for violation of the Public Records Act, R.C. 149.43, violation of the Public Meetings Act, R.C. 121.22, breach of fiduciary duty, and negligence.

{¶ 6} In July 2007, appellants filed an amended complaint. Additionally, the board moved to dismiss the breach-of-fiduciary-duty and negligence claims pursuant to Civ.R. 12(B)(6). Appellants also filed a second amended complaint, adding a claim for unauthorized conduct. Consequently, the board also requested dismissal of the unauthorized-conduct claim. Thereafter, appellants filed a response to the board's motion to dismiss their breach-of-fiduciary-duty claim. Appellants also filed a separate response to the board's motion to dismiss their unauthorized-conduct claim, in which they also moved for declaratory judgment, judgment on the pleadings, and/or summary judgment on that claim and requested a writ of prohibition.

{¶ 7} On August 7, 2007, the trial court granted the board's motion to dismiss appellants' breach-of-fiduciary-duty and unauthorized-conduct claims [1] and denied appellants' motion for declaratory judgment, judgment on the pleadings, and/or summary judgment regarding the unauthorized-conduct claim. In doing so, the trial court found that the board had the authority to pass a resolution to demolish

---

1. The trial court declined to address the board's motion to dismiss appellants' negligence claim at that time.

the courthouse, particularly since it expressly had the discretion to rebuild one; that Ohio has not recognized a fiduciary duty of county commissioners or other elected officials to exercise due diligence during their decision-making process; and that judicial review of legislative policy decisions violates separation of powers principles.

{¶ 8} On August 28, 2007, the trial court certified its dismissal of the unauthorized-conduct and breach-of-fiduciary-duty claims, denied appellants' motion for a preliminary injunction, and certified that the judgment, along with the August 7 judgment, was final pursuant to Civ.R. 54(B).

{¶ 9} In September 2007, appellants appealed to this court and also moved the trial court for a separate injunction pending appeal to prevent the board from demolishing the courthouse, which the trial court denied. Subsequently, appellants applied to this court for an injunction pending appeal.

{¶ 10} In October 2007, we denied appellants' application for an injunction pending appeal, noting that they had failed to appeal the trial court's denials of their motions for an injunction.

{¶ 11} In November 2007, the board moved to dismiss appellants' appeal, alleging that the trial court's dismissal of the breach-of-fiduciary-duty and unauthorized-conduct claims was not a final, appealable order.

{¶ 12} It is from the trial court's August 7 and August 28, 2007 judgments that appellants appeal, presenting the following assignments of error for our review.[2]

## Assignment of Error No. I

The trial court committed reversible error when it granted defendants' Civil Rule 12(b)(6) motion to dismiss and denied plaintiffs' Civil Rule 56 motion for summary judgment, Civil Rule 56 (sic)[3] judgment on the pleadings and Civil Rule 57 declaratory judgment on Cause of Action No. 6 alleging unauthorized conduct.

## Assignment of Error No. II

The trial court committed reversible error when it granted defendants' Civil Rule 12(b)(6) motion to dismiss, and denied plaintiffs' Civil Rule 56 motion for

---

**2.** We note that although appellants appeal from both of the trial court's August 2007 judgment entries, they presumably appeal only from that portion of the August 28 judgment certifying the dismissal of the breach-of-fiduciary-duty and unauthorized-conduct claims, not the portion denying the preliminary injunction. Given that appellants did not address any other portion of the August 28 judgment in either their appellate brief or during oral argument, we address only the trial court's August 7 judgment.

**3.** We note that Civ.R. 12(C) governs motions for judgment on the pleadings, not Civ.R. 56.

summary judgment, civil rule 56 (sic) judgment on the pleadings and Civil Rule 57 declaratory judgment on Cause of Action No. 4 alleging breach of fiduciary duty.

{¶ 13} Before reaching the merits of appellants' appeal, we must first rule upon the board's motion to dismiss the appeal for lack of a final, appealable order.

{¶ 14} Appellate jurisdiction is limited to review of lower courts' final judgments. Section 3(B)(2), Article IV of the Ohio Constitution. A final order is one that disposes of the whole case or some separate and distinct branch thereof. *Noble v. Colwell* (1989), 44 Ohio St.3d 92, 94, 540 N.E.2d 1381. To be a final, appealable order, a judgment entry must meet the requirements of R.C. 2505.02 and, if applicable, Civ.R. 54(B). *Chef Italiano Corp. v. Kent State Univ.* (1989), 44 Ohio St.3d 86, 88, 541 N.E.2d 64; *Centex Home Equity Co., L.L.C. v. Williams,* 3d Dist. No. 6–06–07, 2007-Ohio-902, 2007 WL 641405, ¶ 12.

{¶ 15} Under R.C. 2505.02, an order is final and may be reviewed, affirmed, modified, or reversed when it is one of the following:

An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;

An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment;

An order that vacates or sets aside a judgment or grants a new trial;

An order that grants or denies a provisional remedy * * *.

R.C. 2505.02(B)(1)–(4).

{¶ 16} Additionally, when multiple claims or parties are involved, the trial court "may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." Civ.R. 54(B). However, a finding of "no just reason for delay" under Civ.R. 54(B) does not make appealable an otherwise nonappealable order, *McCabe/Marra Co. v. Dover* (1995), 100 Ohio App.3d 139, 160, 652 N.E.2d 236; *Cassim v. Cassim* (1994), 98 Ohio App.3d 576, 579, 649 N.E.2d 28, and an appellate court is not bound by a trial court's determination that its judgment constitutes a final, appealable order. *Ft. Frye Teachers Assn. v. Ft. Frye Local School Dist. Bd. of Edn.* (1993), 87 Ohio App.3d 840, 843, 623 N.E.2d 232, fn. 4; *Miller v. First Internatl. Fid. & Trust Bldg., Ltd.,* 165 Ohio App.3d 281, 2006-Ohio-187, 846 N.E.2d 87, ¶ 26.

{¶ 17} The case sub judice does not involve an order made in a special proceeding, an order that vacates a judgment or grants a new trial, or an order involving a provisional remedy. Thus, the issue is whether the trial court's order

affects a substantial right in an action that in effect determines the action and prevents a judgment.

{¶ 18} The board argues that although the trial court's judgment affected a substantial right, it did not in effect determine the action and prevent a judgment because appellants still have several determinative claims pending in the trial court. Even though appellants' violation of the Public Records Act, violation of the Public Meetings Act, and negligence claims are still pending before the trial court, these remaining claims are all separate and distinct from the breach-of-fiduciary-duty and unauthorized-conduct claims because they arose from a different set of operative facts. See, e.g., *Curtiss–Wright Corp. v. General Elec. Co.* (1980), 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1. The negligence claim stems from facts surrounding the board's maintenance of the courthouse, and the Public Records Act and Public Meetings Act claims stem from facts surrounding the board's recordkeeping and meetings conduct, while the breach-of-fiduciary-duty claim stems from facts surrounding the board's collection and consideration of data. The unauthorized-conduct claim is purely a legal issue.

{¶ 19} Moreover, the trial court's dismissal of the breach-of-fiduciary-duty and unauthorized-conduct claims, and its simultaneous denial of the motion for declaratory judgment, judgment on the pleading, and/or summary judgment on the unauthorized-conduct claim, determined those actions and prevented appellants from obtaining a judgment on those grounds. Thus, we find that the trial court's August 7, 2007 judgment, certified in its August 28, 2007 judgment, was a final, appealable order.

{¶ 20} Having determined that appellants' appeal is properly before us, we now turn to the merits of their appeal and apply the following standard of review throughout.

### Standard of Review

{¶ 21} A trial court's order granting a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief may be granted is subject to de novo review on appeal. *Davidson v. Davidson*, 3d Dist. No. 17–05–12, 2005-Ohio-6414, 2005 WL 3274853, at ¶ 8, citing *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, at ¶ 4–5. In order to sustain the grant of dismissal, "it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *LeRoy v. Allen, Yurasek, & Merklin*, 114 Ohio St.3d 323, 2007-Ohio-3608, 872 N.E.2d 254, at ¶ 14, citing *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 11. In reviewing whether a motion to dismiss should be granted, we must construe all factual allegations in the complaint as true. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753.

Additionally, the material allegations of the complaint and any inferences drawn therefrom must be construed in favor of the nonmoving party. *LeRoy*, 114 Ohio St.3d 323, 2007-Ohio-3608, 872 N.E.2d 254, at ¶ 14, citing *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 418, 650 N.E.2d 863.

### Assignment of Error No. I

{¶ 22} In their first assignment of error, appellants assert that the trial court erred in granting the board's motion to dismiss and by denying their motion for declaratory judgment, judgment on the pleadings, and/or summary judgment regarding their unauthorized conduct claim. Specifically, appellants contend that the General Assembly did not give the board the power to demolish the courthouse and that the trial court was prohibited from interpreting the term "rebuild" because it was unambiguous. We disagree.

{¶ 23} It is well-settled that county officials and entities do not "have authority to regulate unless the General Assembly affirmatively grants it." *Geauga Cty. Bd. of Commrs. v. Munn Rd. Sand & Gravel* (1993), 67 Ohio St.3d 579, 583, 621 N.E.2d 696; see also *State ex rel. Shriver v. Belmont Cty. Bd. of Commrs.* (1947), 148 Ohio St. 277, 35 O.O. 286, 74 N.E.2d 248, paragraph two of the syllabus, citing *Elder v. Smith* (1921), 103 Ohio St. 369, 133 N.E. 791, paragraph one of the syllabus. Any grant of authority "must be in clear and certain terms," and the presumption against authority requires the grant to be strictly construed. *Geauga Cty. Bd. of Commrs.*, 67 Ohio St.3d at 583, 621 N.E.2d 696. Thus, "in the absence of a specific statutory grant of authority, a board of county commissioners is powerless to enact legislation." Id.

{¶ 24} When applying a statute, the judiciary's primary purpose must be to give effect to the intention of the legislature. *In re McClanahan*, 5th Dist. No. 2004AP010004, 2004-Ohio-4113, 2004 WL 1758408, at ¶ 16, citing *Henry v. Cent. Natl. Bank* (1968), 16 Ohio St.2d 16, 20, 45 O.O.2d 262, 242 N.E.2d 342. In doing so, it is the duty of the courts to give effect to the words used, not to delete words used or to insert words not used. *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 524 N.E.2d 441, paragraph three of the syllabus. It is axiomatic that if the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no need for a court to apply further rules of statutory interpretation. *State v. Siferd*, 151 Ohio App.3d 103, 117, 2002-Ohio-6801, 783 N.E.2d 591. Words and phrases must be read in context and given their usual, normal, and/or customary meanings. R.C. 1.42; *Proctor v. Kardassilaris*, 115 Ohio St.3d 71, 2007-Ohio-4838, 873 N.E.2d 872, at ¶ 12.

{¶ 25} R.C. 307.01 enumerates the powers granted to the board by the General Assembly:

A courthouse, jail, public comfort station, offices for county officers, and a county home shall be provided by the board of county commissioners when, in its judgment, any of them are needed. The buildings and offices shall be of such style, dimensions, and expense as the board determines.

R.C. 307.01(A). Further, R.C. 307.02 provides that "[t]he board of county commissioners of any county, in addition to its other powers, may purchase, * * * lease, appropriate, construct, enlarge, improve, rebuild, equip, and furnish a courthouse" and numerous other facilities.

{¶ 26} Here, appellants argue that the board was prohibited from passing a resolution to demolish the courthouse because the General Assembly did not expressly provide the terms "demolish" or "destroy" among the powers enumerated in R.C. 307.02 and that the trial court inappropriately interpreted the unambiguous term "rebuild" to include demolition. However, it is undisputed that the General Assembly affirmatively granted the board the authority under R.C. 307.01 to regulate the courthouse and other specified facilities. Clearly, the board has discretion to determine not only that a courthouse is needed but also that one is not needed. Nothing in the plain language of R.C. 307.01(A) limits the judgment of the board solely to determining whether a courthouse is needed where none originally exists. Likewise, R.C. 307.01(A) does not prohibit the board from deciding that an existing courthouse is no longer necessary. This is particularly so in light of the additional powers granted to the board under R.C. 307.02 for providing a courthouse, including the power to rebuild.

{¶ 27} Appellants argue that the trial court inappropriately interpreted the term "rebuild" to encompass demolition and that the board could not rebuild a new courthouse on the same location as the current one unless the current courthouse was destroyed by fire, storm, or other natural disaster. However, a review of the record indicates that the trial court did not find that the term "rebuild" was ambiguous and, consequently, did not interpret it. Instead, the trial court merely applied the plain meaning of "rebuild" in finding that the board was authorized to demolish the courthouse. The ordinary, dictionary definition of "rebuild" is "to make extensive repairs to, including the replacement of missing or defective parts; to restore to a previous state or condition; to make extensive changes in; to build again or anew." Webster's Third New International Dictionary (2002) 1893. Clearly, the board could decide not only to restore or repair the courthouse, but also to make extensive changes to it or to completely build it again or anew. The ability to demolish the courthouse is inherent in the ability to build it again or anew at the same location. Contrary to appellants' assertion, neither the definition of "rebuild" or R.C. 307.02 restricts the board's ability to completely rebuild the courthouse only after it has been destroyed by fire or a natural disaster.

{¶ 28} Additionally, were we to accept appellants' reading of R.C. 307.01, 307.02, and "rebuild," the board would not only be prevented from demolishing a courthouse, but it could also never demolish any of the other numerous public facilities that it is authorized to provide under R.C. 307.02. The board could only repair or renovate an existing structure—no matter its condition—or construct a new one without tearing the old one down—regardless of the economic costs required to do so. Instead, the General Assembly would have to determine when a public facility listed under R.C. 307.02 should be demolished—for each and every county in Ohio.[4] Such a reading would work an absurdity and defies the legislative intent that the board of each county make these decisions. See, e.g., *State ex rel. Dispatch Printing Co. v. Wells* (1985), 18 Ohio St.3d 382, 384, 18 OBR 437, 481 N.E.2d 632 ("It is an axiom of judicial interpretation that statutes be construed to avoid unreasonable or absurd consequences"). Thus, we find that the board had the authority to pass a resolution to demolish the courthouse. Consequently, we find that the trial court properly denied appellants' motion for declaratory judgment, judgment on the pleadings, and/or summary judgment on their unauthorized conduct claim.

{¶ 29} Accordingly, we overrule appellants' first assignment of error.

### Assignment of Error No. II

{¶ 30} In its second assignment of error, appellants assert that the trial court erred in granting the board's motion to dismiss and by denying their motion for declaratory judgment, judgment on the pleadings, and/or summary judgment regarding the breach-of-fiduciary-duty claim.[5] Specifically, appellants contend that the board had a fiduciary duty to act in the best interests of the Seneca County residents, that the board breached its fiduciary duty, and that issuing a writ of prohibition and/or writ of mandamus would not violate separation of powers principles. We disagree.

---

4. In addition to the numerous methods by which it may provide a courthouse, the board is also authorized to purchase, lease, construct, improve, rebuild, etc., the following public facilities: county offices, a jail, county home, juvenile court building, detention facility, public market houses, retail store rooms and offices, county children's home, community mental health facility, community mental retardation or developmental disability facility, facilities for senior citizens, alcohol treatment and control center, other necessary buildings, public stadiums, public auditorium, exhibition hall, zoological park, public library buildings, golf courses, and off-street parking facilities. See R.C. 307.02.

5. We note that contrary to the caption of its second assignment of error, appellants' motion for declaratory judgment, judgment on the pleadings, and/or summary judgment pertained solely to the unauthorized-conduct claim, not the breach-of-fiduciary-duty claim. Consequently, we make no findings on those grounds regarding the breach-of-fiduciary-duty claim and consider only the trial court's ruling on the board's motion to dismiss that claim.

{¶ 31} In Count Four of its second amended complaint, appellants set forth the following factual allegations regarding its breach-of-fiduciary-duty claim, which, for the purposes of consideration of this motion, we must assume are true: that the costs of the courthouse project will be $10,000,000 to $15,000,000; that the board failed and refused to retain independent professional legal, architectural, engineering, construction, historic preservation, or tax advisors necessary to help it make an informed and prudent decision; that the board spent $300,000 for consultants who persuaded it to proceed with demolition; that, in 2001, the board—comprised of different members—established a courthouse committee to examine the issue, which determined that the courthouse should be repaired and renovated; that the taxpayers did not pass the tax increase required for the renovation; that, to this date, the board has spent $400,000 on studies, many of which concluded that renovation is the least expensive alternative; and that the board failed to conduct due diligence in its fact-finding process.

{¶ 32} In support of its argument, appellants rely on the broad assertion that "a public office is a public trust and a public official is a fiduciary." *State v. McKelvey* (1967), 12 Ohio St.2d 92, 95, 41 O.O.2d 372, 232 N.E.2d 391, citing *Crane Township ex rel. Stalter v. Secoy* (1921), 103 Ohio St. 258, 132 N.E. 851. However, this principle was established, and has typically been applied, in the context of public officials who engaged in some sort of financial misconduct, such as using their public office for private gain, see *McKelvey* and *State v. Lozano* (2001), 90 Ohio St.3d 560, 740 N.E.2d 273, or misappropriating funds in contravention of express statutory duties, see *Secoy* and *State v. Hale* (1991), 60 Ohio St.3d 62, 573 N.E.2d 46. Appellants have produced no authority that establishes a fiduciary duty in legislative decisionmaking, nor have we found any.

{¶ 33} Additionally, appellants' reliance upon *McKelvey* and similar cases overlooks another well-established principle that "matters in general that are committed to the pure discretion of a public officer * * * [can] not be availed of in a suit against the public officer." *Secoy,* 103 Ohio St. at 260, 132 N.E. 851; see also *State ex rel. Methodist Children's Home Assn. of Worthington v. Worthington Village School Dist. Bd. of Edn.* (1922), 105 Ohio St. 438, 138 N.E. 865, syllabus ("writ of mandamus may issue only to require the performance of an act specially enjoined by law, and may not be employed to control the discretion lodged by statute in a public board or officer"); *State ex rel. Brophy v. Crawford* (1934), 127 Ohio St. 580, 190 N.E. 221. Likewise, it is a fundamental principle of the doctrine of separation of powers that the legislative branch is "the ultimate arbiter of public policy." *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Dupuis,* 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, at ¶ 21.

{¶ 34} Here, appellants have not alleged that the board members misused their office for private gain or misappropriated funds in contravention of a statutory mandate. Instead, appellants take issue with the board's fact-finding and decisionmaking process. The decision whether to demolish or renovate the courthouse involved a purely discretionary matter—a decision that the legislature squarely placed within the board's judgment under R.C. 307.01 and 307.02. As noted above, the board had the authority to demolish the courthouse and, therefore, did not violate any statutory mandate by deciding to do so.

{¶ 35} Additionally, R.C. 307.01 and 307.02 do not require the board to exercise due diligence, to retain independent professionals, or to select the least expensive option when making decisions about a courthouse or other public facility. While the public should expect every elected official to exercise due diligence and careful consideration of all factors and options available to them in making each and every legislative decision, we cannot find a statutory requirement that they do so. The electoral process is designed to allow the public to choose elected officials whose decisions can be trusted and relied upon, and to allow the opportunity to replace those elected officials whose decisions do not reflect the best interests of their constituents. Thus, while we certainly hope that the board would engage in due diligence and careful consideration of all factors and options given the importance of this issue to the citizens of Seneca County, we cannot find that it has a duty to do so. Nor can we create such a duty.[6] See *State ex rel. White v. Cleveland* (1932), 42 Ohio App. 72, 74, 181 N.E. 545 (where law does not create duty, court cannot be called upon to create it and compel its performance by mandamus). Because the board does not have a fiduciary duty when exercising its discretion in the legislative process, we find that the trial court did not err in granting the board's motion to dismiss appellants' breach-of-fiduciary-duty claim.

{¶ 36} Accordingly, we overrule appellants' second assignment of error.

{¶ 37} Having found no error prejudicial to the appellants herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

SHAW, P.J., and PRESTON, J., concur.

---

6. This court, of course, expresses no opinion as to whether the board has made the best possible decision as to the continued use or existence of the current Seneca County courthouse. We look only to the issues specifically raised in the assignments of error and the board's authority to make that decision.