[Cite as *State v. Phillips*, 2012-Ohio-5950.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## VAN WERT COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,             CASE NO. 15-12-02

      v.

CHAD D. PHILLIPS,               O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Van Wert County Common Pleas Court
Trial Court No. CR11-05-071

**Judgment Affirmed**

Date of Decision: December 17, 2012

APPEARANCES:

    *Kenneth J. Rexford* **for Appellant**

    *Eva J. Yarger* **for Appellee**

**ROGERS, J.**

{¶1} Defendant-Appellant, Chad Phillips, challenges the judgment of the Court of Common Pleas of Van Wert County convicting him of aggravated murder and sentencing him to a term of life imprisonment with the possibility of parole after 30 years. On appeal, Phillips essentially argues that the trial court committed the following reversible errors: (1) sentencing him to a life term with the possibility of parole after 30 years; (2) applying unconstitutional and ambiguous sentencing laws that lack objective standards; and (3) accepting Phillips' guilty plea, which was not knowing, voluntary, and intelligent. For the reasons that follow, we affirm the trial court's judgment.

{¶2} On May 20, 2011, the Van Wert County Grand Jury indicted Phillips on the following four counts: (1) aggravated murder in violation of R.C. 2903.01(A), an unspecified felony; (2) attempted murder in violation of R.C. 2903.02(A), 2923.02(A), a felony of the first degree; (3) aggravated burglary in violation of R.C. 2911.11(A)(1), a felony of the first degree; and (4) felonious assault in violation of R.C. 2903.11(A)(2), a felony of the second degree. The indictment did not allege the applicability of an aggravating circumstance enumerated in R.C. 2929.04(A).

{¶3} The indictment arose out of a May 12, 2011 incident in which Phillips fatally shot Christopher McMillen. At the time of the shooting, Phillips' previous

girlfriend was romantically involved with McMillen. After drinking a copious amount of alcohol, Phillips traveled to confront McMillen at the girlfriend's house. Shortly after Phillips arrived and with the girlfriend's children and brother present, he shot McMillen in the leg. McMillen then crawled into a bathroom and closed the door behind him. Phillips followed him, reloaded, and shot several times through the door. McMillen died later that evening from the wounds he sustained.

{¶4} On August 4, 2011, Phillips entered a written plea of not guilty by reason of insanity. He also moved for the court to determine his competency to stand trial. After receiving expert testimony and conducting a competency hearing, the trial court found that Phillips was competent to stand trial on October 21, 2011.

{¶5} On November 10, 2011, Phillips changed his plea to guilty for the aggravated murder count of the indictment. The change of plea was made in conjunction with a negotiated plea agreement in which the State agreed to drop the remaining three counts of the indictment. The trial court conducted an extensive colloquy with Phillips to determine the voluntary and knowing nature of his change of plea. The colloquy started with the following:

> THE COURT: Mr. Phillips, before accepting plea I am obligated to ask you some questions to determine if you know and understand the rights that you are giving up, the consequences of a guilty plea and

that you are changing your plea of your own free will.  Please state your full and correct name for the record.

CHAD D. PHILLIPS: Chad Dewayne Phillips.

THE COURT: How old are you?

CHAD D. PHILLIPS: Thirty-two (32).

THE COURT: And what schooling have you had?

CHAD D. PHILLIPS: Eleventh grade, got my GED.

THE COURT: Do you read, write, and understand the English language?

CHAD D. PHILLIPS: Yes, sir.

THE COURT: The offense to which you are pleading states that no person shall purposely and with prior calculation or design cause the death of another.  Have you read the petition to enter the guilty plea?

CHAD D. PHILLIPS: Yes I have, sir.

THE COURT: Did you understand everything in that petition?

CHAD D. PHILLIPS: Yes, I have.

THE COURT: Do you understand the nature of the charge against you?

CHAD D. PHILLIPS: Yes, sir.

THE COURT: Do you understand that a plea of guilty is a complete admission of guilt?

CHAD D. PHILLIPS: Yep.

THE COURT: Do you understand that by pleading guilty you waive, that is, give up your right to have jury or court trial on your plea of

not guilty and not guilty by reason of insanity[?] A trial in which the prosecution must prove your guilt beyond a reasonable doubt; the right to require your accusers to appear before you and confront you with the evidence they have; the right to cross examine accusers and ask them questions that are proper; the right to have the court compel witnesses to appear and testify in your behalf and in your defense; the right to testify if you want to or refuse to testify if you do not want to and your refusal would have no bearing on your guilt or innocence; and the right to appeal the judgment of the trial court should it[s] ruling or verdict be against you[?] Do you waive these rights and your right to jury trial and freely elect to have this court accept your plea of guilty, here and now?

CHAD D. PHILLIPS: Yes, sir. Change of Plea Hearing Tr., p. 3-6.

{¶6} After the State presented the facts of the case regarding the aggravated murder count, the colloquy continued as follows:

THE COURT: Is this the offense to which you are pleading guilty?

CHAD D. PHILLIPS: Yes, sir.

THE COURT: Have you discussed the matter of the plea and the present charges fully and completely with your attorneys, Mr. Camera and Mr. Christman?

CHAD D. PHILLIPS: Yes I have, sir.

THE COURT: Are you satisfied with the service and advice of your attorneys up to the present time?

CHAD D. PHILLIPS: Yes.

THE COURT: Do you understand that no one can compel you to plead guilty?

CHAD D. PHILLIPS: Yes, sir.

THE COURT: Are you changing your plea freely and voluntarily?

CHAD D. PHILLIPS: Yes, I am.

THE COURT: Do you understand that in the event that I accept your plea the only thing that remains to be is to pass sentence and that includes a sentence of years to a state penal institution[?] In this case that could be a maximum sentence of life imprisonment without parole, or life imprisonment with parole eligibility after serving twenty (20) years of imprisonment; or life imprisonment with parole eligibility after serving twenty-five (25) year full years of imprisonment; or life imprisonment with parole eligibility after serving thirty (30) full years of imprisonment and addition[ally] the Court may impose a maximum fine of twenty-five thousand dollars ($25,000). Do you understand these possible sentences?

CHAD D. PHILLIPS: Yes, sir.

THE COURT: Do you understand that irrespective of any statement made to you by any person regarding the sentence you may receive, the sentence that you do receive is solely a matter within the discretion of the trial court, do you understand that?

CHAD D. PHILLIPS: Yes, sir.

THE COURT: Are you a citizen of the United States?

CHAD D. PHILLIPS: Yes, I am.

THE COURT: Are you presently on probation, parole, post-release supervision or community control for any other offense?

CHAD D. PHILLIPS: No, sir.

THE COURT: Have you been induced to plead guilty by any threats, promises, or offers of reward?

CHAD D. PHILLIPS: No, I haven't.

THE COURT: Are you in good health mentally and physically?

CHAD D. PHILLIPS: Yes, sir.

THE COURT: Are you under the care of a doctor for any recent accident, illness, or mental disorder?

CHAD D. PHILLIPS: No, sir.

THE COURT: You are taking some kind of medication for some condition. Is there anything about that you have or the medication you are taking, or the treatment that you are receiving that would cause you not to understand the consequences of what you are doing here today?

CHAD D. PHILLIPS: No. *Id.* at 6-9.

{¶7} The trial court then asked Phillips' attorneys whether they believed Phillips understood the nature of the proceedings. One of the attorneys responded by stating, "Yes, Your Honor, we have spoken with him and he certainly understands the nature of today's proceedings." *Id.* at 9. The colloquy then concluded as follows:

THE COURT: Are you pleading guilty, because you are guilty as charged?

CHAD D. PHILLIPS: Yes, sir.

* * *

THE COURT: The Court finds your plea is freely, voluntarily and understandably made and let the record show that the Defendant withdraws his pleas of not guilty and enters a plea of guilty to Count One, Aggravated Murder and unspecified felony as charged in the indictment without the specification. *Id.* at 9-10.

**{¶8}** The matter then proceeded to the sentencing phase. The trial court conducted a sentencing hearing on December 15, 2011, where it heard statements from Phillips and several family members of the victim. After hearing these statements, considering the arguments of Phillips' counsel, and receiving the presentence investigation report, which revealed that Phillips had no previous felony convictions, the trial court made the following statement:

> The Court having considered the information presented at the sentencing hearing and the record and the factors pertaining to the seriousness of the offense and the likelihood [of] recidivism and the factors contained in Revised Code Section 2929.12 and 2929.13(B), the Court now being fully informed of the circumstances surrounding the charge and finding no cause which would preclude the pronouncement of sentence. It is now the sentence of the law and the judgment of this Court that the Defendant be sentenced to a term of life imprisonment with parole eligibility after serving thirty (30) full years which shall be served in the custody of the Director of the Department of Rehabilitation and Correction. Sentencing Hearing Tr., p. 24.

The trial court journalized its sentence on December 16, 2011. The judgment entry repeats that the trial court considered the factors of R.C. 2929.12, 2929.13(B), the likelihood of recidivism, and the seriousness of the offense when pronouncing sentence.

**{¶9}** Phillips filed this timely appeal, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**AS MR. PHILLIPS WAS NOT ALLEGED TO HAVE COMMITTED HIS CONDUCT WITH ANY AGGRAVATING CIRCUMSTANCE FROM R.C. §2929.04(A) APPLICABLE, DUE PROCESS AND THE EQUAL PROTECTION CLAUSE OF THE OHIO CONSTITUTION AND THE UNITED STATES CONSTITUTION COMPEL A SENTENCE OF 20 TO LIFE.**

*Assignment of Error No. II*

**THE OHIO LEGISLATURE VIOLATED THE SEPARATION OF POWERS DOCTRINE BY IMPROPERLY DELEGATING TO THE JUDICIARY THE POWER TO DETERMINE PAROLE ELIGIBILITY WITH NO REASONABLE STANDARDS FOR SO DETERMINING.**

*Assignment of Error No. III*

**THE LACK OF STANDARDS FOR DETERMINING PAROLE ELIGIBILITY AT SENTENCING VIOLATED MR. PHILLIPS' DUE PROCESS RIGHTS.**

*Assignment of Error No. IV*

**THE LACK OF STANDARDS FOR DETERMINING PAROLE ELIGIBILITY AT SENTENCING DEPRIVED MR. PHILLIPS OF THE EFFECTIVE ASSISTANCE OF COUNSEL, AS COUNSEL CANNOT ADEQUATELY DEFEND HIS CLIENT IN THE CONTEXT OF A HEARING THAT IS RESOLVED ARBITRARILY.**

*Assignment of Error No. V*

**THE LACK OF STANDARDS FOR DETERMINING PAROLE ELIGIBILITY AT SENTENCING RESULTED IN A SENTENCE THAT AMOUNTS TO CRUEL AND UNUSUAL PUNISHMENT, AS RANDOM SENTENCING IS CRUEL AND UNUSUAL.**

*Assignment of Error No. VI*

**THE LACK OF STANDARDS FOR DETERMINING PAROLE ELIGIBILITY DEPRIVES THE ACCUSED OF A MEANINGFUL APPEAL OF SENTENCING, AS SENTENCING IMPOSED WITHOUT STANDARDS IS BY LAW RANDOM AND HENCE NOT SUBJECT TO MEANINGFUL APPEAL.**

*Assignment of Error No. VII*

**OHIO LAW UNCONSTITUTIONALLY DELEGATES TO THE EXECUTIVE BRANCH THE ABILITY TO DETERMINE SENTENCING RANGE BY ALLEGING OR NOT ALLEGING R.C. §2929.04 AGGRAVATING CIRCUMSTANCES.**

*Assignment of Error No. VIII*

**OHIO SENTENCING LAW AMOUNTS TO AN EQUAL PROTECTION VIOLATION, AS A PERSON ALLEGED FALSELY OF AN AGGRAVATING CIRCUMSTANCE FACES A LESSER SENTENCE THAN A PERSON NOT ALLEGED TO HAVE COMMITTED HIS OFFENSE WITH ANY AGGRAVATING CIRCUMSTANCE PRESENT.**

*Assignment of Error No. IX*

**THE PLEA IN THIS CASE WAS NOT KNOWING, VOLUNTARY, AND INTELLIGENT, IN VIOLATION OF CRIMINAL RULE 11.**

*Assignment of Error No. X*

**THE PLEA IN THIS CASE WAS NOT KNOWING, VOLUNTARY, AND INTELLIGENT, IN VIOLATION OF THE OHIO CONSTITUTION AND THE UNITED STATES CONSTITUTION.**

*Assignment of Error No. XI*

**THE PLEA IN THIS CASE WAS NOT KNOWING, VOLUNTARY, AND INTELLIGENT, IN VIOLATION OF THE OHIO CONSTITUTION AND THE UNITED STATES CONSTITUTION BECAUSE THE TRIAL COURT DID NOT DISCUSS THE AFFIRMATIVE DEFENSE OF SANITY AT THE TIME OF THE ACT.**

Due to the nature of the second, third, fourth, fifth, sixth, seventh, and eighth assignments of error, we elect to address them together. Further, due to the nature of the ninth, tenth, and eleventh assignments of error we elect to address them together.

*Assignment of Error No. I*

{¶10} In his first assignment of error, Phillips argues that the trial court erroneously handed down a sentence of life imprisonment with the possibility of parole after 30 years. Specifically, he claims that the trial court improperly used R.C. 2929.03(A)(1) in pronouncing its sentence. Phillips contends that R.C. 2929.022(B)(1), R.C. 2929.03(A)(1), and R.C. 2929.03(C)(1), when read in concert, are ambiguous. Consequently, under the due process and equal protection clauses, the statutes should be construed to only allow a life sentence with the possibility of parole after 20 years unless the state alleges and proves an aggravating circumstance beyond a reasonable doubt. We disagree.

*Applicable Statutes*

**{¶11}** R.C. 2929.022(B), in relevant part, states the following:

At the sentencing hearing, the panel of judges, if the defendant was tried by a panel of three judges, or the trial judge, if the defendant was tried by jury, shall, when required pursuant to division (A)(2) of this section, first determine if the specification of the aggravating circumstance of a prior conviction listed in division (A)(5) of section 2929.04 of the Revised Code is proven beyond a reasonable doubt. If the panel of judges or the trial judge determines that the specification of the aggravating circumstance of a prior conviction listed in division (A)(5) of section 2929.04 of the Revised Code is proven beyond a reasonable doubt or if they do not determine that the specification is proven beyond a reasonable doubt but the defendant at trial was convicted of a specification of any other aggravating circumstance listed in division (A) of section 2929.04 of the Revised Code, the panel of judges or the trial judge and trial jury shall impose sentence on the offender pursuant to division (D) of section 2929.03 and section 2929.04 of the Revised Code. If the panel of judges or the trial judge does not determine that the specification of the aggravating circumstance of a prior conviction listed in division (A)(5) of section 2929.04 of the Revised Code is proven beyond a reasonable doubt and the defendant at trial was not convicted of any other specification of an aggravating circumstance listed in division (A) of section 2929.04 of the Revised Code, the panel of judges or the trial judge shall terminate the sentencing hearing and impose sentence on the offender as follows:

(1) Subject to division (B)(2) of this section, the panel or judge shall impose a sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment on the offender.

R.C. 2929.03, in relevant part, provides the following:

(A) If the indictment or count in the indictment charging aggravated murder does not contain one or more specification of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, then, following a verdict of guilty of the charge

of aggravated murder, the trial court shall impose sentence on the offender as follows:

(1)   Except as provided in division (A)(2) of this section, the trial court shall impose one of the following sentences on the offender:

(a)   Life imprisonment without parole;
(b)   Subject to division (A)(1)(e) of this section, life imprisonment with parole eligibility after serving twenty years of imprisonment;
(c)   Subject to division (A)(1)(e) of this section, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment; [and]
(d)   Subject to division (A)(1)(e) of this section, life imprisonment with parole eligibility after serving thirty full years of imprisonment.

* * *

(C)(1) If the indictment or count in the indictment charging aggravated murder contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, then, following a verdict of guilty of the charge but not guilty of the each of the specifications, and regardless whether the offender raised the matter of age pursuant to section 2929.023 of the Revised Code, the trial court shall imposes sentence on the offender as follows:

(a)   Except as provided in division (C)(1)(b) of this section, the trial court shall impose one of the following sentences on the offender:

(i)   Life imprisonment without parole;
(ii)  Subject to division (C)(1)(a)(v) of this section, life imprisonment with parole eligibility after serving twenty years of imprisonment;
(iii) Subject to division (C)(1)(a)(v) of this section, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment;
(iv) Subject to division (C)(1)(a)(v) of this section, life imprisonment with parole eligibility after serving thirty full years of imprisonment.

-13-

*Statutory Interpretation Principles*

**{¶12}** It is axiomatic that if the language of a statute is plain and unambiguous, and conveys a clear and definite meaning, there is no need for a court to apply further rules of statutory interpretation. *State v. Siferd*, 151 Ohio App.3d 103, 2002-Ohio-6801, ¶ 33 (3d Dist.). Words and phrases must be read in context and given their usual, normal, and customary meanings. R.C. 1.42; *Proctor v. Kardassilaris*, 115 Ohio St.3d 71, 2007-Ohio-4838, ¶ 12. However, "[i]t is an axiom of judicial interpretation that statutes be construed to avoid unreasonable or absurd consequences." *State ex rel. Cook v. Seneca Cty. Bd. Of Commrs.*, 175 Ohio App.3d 721, 2008-Ohio-736, ¶ 28 (3d Dist.), quoting *State ex rel. Dispatch Printing Co v. Wells*, 18 Ohio St.3d 382, 384 (1985).

**{¶13}** However, where the meaning of a statute is ambiguous, a court may examine legislative history or examine the statute *in pari materia* to ascertain its meaning. *State v. Jackson,* 102 Ohio St.3d 380, 2004-Ohio-3206, ¶ 34; *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463 (1956), paragraph two of the syllabus. "In determining legislative intent when faced with an ambiguous statute, the court may consider several factors, including the object sought to be obtained, circumstances under which the statute was enacted, the legislative history, and the consequences of a particular construction." *Bailey v. Republic Engineered Steels, Inc.*, 91 Ohio St.3d 38, 40 (2001). Additionally, "'a court cannot pick out one

sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body.'" *Jackson* at ¶ 34, quoting *State v. Wilson*, 77 Ohio St.3d 334, 336 (1997). Further, a court is permitted to consider laws concerning the same or similar subjects to discern legislative intent. R.C. 1.49(D). "'Statutes relating to the same matter or subject * * * are *in pari materia* and should be read together to ascertain and effectuate if possible the legislative intent.'" *D.A.B.E., Inc. v. Toledo–Lucas Cty. Bd. of Health,* 96 Ohio St.3d 250, 2002-Ohio-4172, ¶ 20, quoting *Weygandt* at paragraph two of the syllabus.

*R.C. 2929.022 and R.C. 2929.03(A)(1)*

**{¶14}** When reviewing the statutes listed above, we find no fatal ambiguity. R.C. 2929.022 is replete with references that it applies only where the State has alleged the aggravating circumstance specification of a previous conviction. *See* R.C. 2929.022(A), (A)(1), (A)(2), (A)(2)(b), (A)(2)(b)(i)-(ii), (B). Conversely, R.C. 2929.03(A) states that if there is no allegation of a specified aggravating circumstance in the indictment, then the trial court may hand down a life sentence without parole, a life sentence with the possibility of parole after 20 years, a life sentence with the possibility of parole after 25 years, or a life sentence with the possibility of parole after 30 years. In light of these plain terms, R.C. 2929.022

does not conflict with R.C. 2929.03(A) since they apply to entirely different types of prosecutions.

{¶15} Here, the State did not allege that Phillips had a previous conviction. Thus, none of the provisions of R.C. 2929.022 apply to this matter. Further, the State did not allege any aggravating circumstance specification in the indictment. As such, the trial court properly applied R.C. 2929.03(A)(1) when sentencing Phillips.

{¶16} Even if we were to determine that the two statutes were inconsistent and ambiguous, we would still reach the same result. The legislative history plainly shows that the General Assembly's intent in enacting the current version of R.C. 2929.03(A) was to ensure that trial court judges had discretion to choose among the four options listed above when sentencing those convicted of aggravated murder. The Ohio Legislative Service Commission's final analysis of Sub. H.B. 184, which amended R.C. 2929.03(A) in 2004, includes the following summary of the bill:

> In addition to the existing sentence of life imprisonment with parole eligibility after serving 20 years of imprisonment, [the bill] permits the court to impose a sentence of life imprisonment without parole, life imprisonment with parole eligibility after serving 25 full years of imprisonment, or life imprisonment with parole eligibility after serving 30 full years of imprisonment upon an offender who is convicted of or pleads guilty to aggravated murder and who either is not charged with or is charged with but is not convicted of and does not plead guilty to a specification of an aggravating circumstance. LSC Bill Analyses, Sub. H.B. 184 (as passed by the General

Assembly), 2003-2004 LSC Bill Analyses, 125th General Assembly, available at: http://lsc.state.oh.us/analyses/Analysis125.nsf/All%20Bills%20and %20Resolutions/DEF43D854A58F77785256F930062A04C.

In his appellate brief, Phillips even admits that this was the legislative intent behind the current form of R.C. 2929.03(A). In light of this intent, even if there were an ambiguity in the statute, we would find that R.C. 2929.03(A) applied to this matter and would find no error in the trial court's judgment on this basis.

*R.C. 2929.022 and R.C. 2929.03(C)(1)*

{¶17} R.C. 2929.03(C)(1) plainly states that it only applies when the State has alleged an aggravating circumstance specification. As such, it does not apply to this matter in which the State failed to bring such a specification. Consequently, we decline addressing any incongruity between R.C. 2929.022, which also does not apply here, and R.C. 2929.03(C)(1).

*Equal Protection and Due Process*

{¶18} Based on our finding that the trial court properly applied R.C. 2929.03(A) and that the statute is not ambiguous, we need not address Phillips' arguments that the application of the statute violated equal protection and due process. *See* App.R. 12(A)(2).

{¶19} In sum, R.C. 2929.03(A) is not in conflict with R.C. 2929.022 or R.C. 2929.03(C)(1), neither of which apply here because the State did not allege an aggravating circumstance specification. As such, the trial court properly

-17-

sentenced Phillips under R.C. 2929.03(A) to a life prison term with parole eligibility after 30 years.

{¶20} Accordingly, we overrule Phillips' first assignment of error.

*Assignments of Error Nos. II, III, IV, V, VI, VII, & VIII*

{¶21} In his second through eighth assignments of error, Phillips again challenges the trial court's imposition of parole eligibility after 30 years and bases his challenge on various constitutional grounds. Specifically, he contends that R.C. 2929.03(A)'s delegation of parole determinations to the executive branch, the lack of standards governing trial courts' decisions regarding parole eligibility, and production of different sentences for offenders render the statute unconstitutional. The essential import of these arguments is that R.C. 2929.03(A) is unconstitutional and we should instruct the trial court to pronounce a sentence of life imprisonment with parole eligibility after 20 years. We note that Phillips did not raise issues of constitutionality in the trial court. When a party fails to raise such issues, they are waived. *See, e.g.*, *Erwin v. Erwin*, 3d Dist. No. 9-08-15, 2009-Ohio-407, ¶ 17.

{¶22} Accordingly, Phillips' second, third, fourth, fifth, sixth, seventh, and eighth assignments of error are overruled.

*Assignments of Error Nos. IX, X, & XI*

{¶23} In his ninth, tenth, and eleventh assignments of error, Phillips claims that his change of plea was not knowing, voluntary, and intelligent, as required

under Crim.R. 11, the Ohio Constitution, and the United States Constitution. Specifically, Phillips asserts that it was erroneous for the trial court to accept his change of plea without informing him of his lack of eligibility for probation and community control sanctions and without discussing the insanity defense. We disagree.

*Crim.R. 11(C)(2)*

{¶24} Crim.R. 11(C)(2) instructs trial courts that in felony cases they can accept a plea of guilty or no contest only after addressing the defendant in a colloquy for the purpose of doing the following:

> (a) Determining that the defendant is making the plea voluntarily with understanding of the nature of the charges and the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
> (c) Informing the defendant of and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself. Crim.R. 11(C)(2).

The rule is intended to ensure that guilty pleas are entered knowingly, intelligently, and voluntarily. *State v. Windle*, 4th Dist. No. 03CA16, 2004-Ohio-6827, ¶ 7. "Criminal Rule 11(C)(2) clearly and distinctly mandates that the trial

judge, before accepting a guilty plea in a felony case, inform the defendant of his rights as expressed in the rule and determine that he understands these rights and that he is making his guilty plea voluntarily." *State v. Stewart*, 51 Ohio St.2d 86, 88 (1977), quoting *State v. Younger*, 46 Ohio App.2d 269 (8th Dist. 1975), syllabus. Failure to ensure that a plea is entered knowingly, intelligently, and voluntarily renders its enforcement unconstitutional. *State v. Engle*, 74 Ohio St.3d 525, 527 (1996).

{¶25} Our review of a trial court's Crim.R. 11(C)(2) colloquy depends on whether the defendant complains of a failure to inform him of constitutional rights or a failure to inform him of non-constitutional rights. *State v. Thomas*, 3d Dist. No. 10-10-17, 2011-Ohio-4337, ¶ 20-21. If the appeal implicates the defendant's constitutional rights, then we review the colloquy to ensure that the trial court strictly complied with Crim.R. 11(C)(2)'s dictates. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 18. Conversely, if the appeal implicates non-constitutional matters, then we only review the colloquy to ensure that the trial court substantially complied with Crim.R. 11(C)(2). *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, ¶ 11-12. "Substantial compliance means that under the totality of the circumstances, the defendant subjectively understands the implication of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

{¶26} Here, Phillips complains of the trial court's failure to inform him of his lack of eligibility for parole and community control sanctions. He also complains of the trial court's purported failure to discuss the insanity defense. Neither of these complaints implicates the constitutional rights enumerated in Crim.R. 11(C)(2). *See Veney* at ¶¶ 19-21 (identifying the following constitutional rights as requiring strict compliance with Crim.R. 11(C)(2): right to jury trial; right to confront witnesses; privilege against self-crimination; and right to require state to prove guilt beyond a reasonable doubt). As such, we review the trial court's colloquy with Phillips only to ensure that the trial court substantially complied with Crim.R. 11(C)(2). *See Stewart* at syllabus (applying substantial compliance analysis to trial court's failure to inform the defendant of community control sanction).

*Eligibility for Probation and Community Control Sanctions*

{¶27} *State v. Brown*, 11th Dist. No. 2003-G-2504, 2004-Ohio-1843, is instructive here. In *Brown*, the defendant was charged with a first degree felony under R.C. 2907.02(A)(1)(b). The felony carried a prison sentence of three to 10 years. After the defendant pleaded guilty and the trial court handed down a 10-year sentence, the defendant questioned the voluntariness of his plea because the trial court failed to inform him that he was ineligible for community control

sanctions. *Id.* at ¶ 1-3. In finding that this failure did not constitute reversible error, the court declared the following:

> It is well-established * * * that a trial court substantially complies with the requirement of Crim[.]R. 11(C)(2)(a) when the court informs a defendant that a mandatory prison sentence will be imposed and the defendant subjectively understands that his sentence must include prison time. The reasoning is that a defendant who understands that actual incarceration is mandatory necessarily understands that he is ineligible for probation or community control sanctions and, therefore, cannot demonstrate prejudice as a result of the court's failure to comply literally with the rule. *Id.* at ¶ 13.

{¶28} We find the *Brown* court's reasoning to be persuasive and apply it to the factually similar scenario present in this matter. Here, Phillips was charged with aggravated murder under R.C. 2903.01(A) without an aggravating circumstance specification and R.C. 2929.03(A)(1) governed his sentencing. R.C. 2929.03(A)(1) provides that a defendant convicted of aggravated murder must be sentenced to a term of life imprisonment and that parole eligibility may be denied altogether or allowed after 20, 25, or 30 years of prison service.

{¶29} During the plea colloquy, the following exchange occurred between the trial court and Phillips:

> THE COURT: Do you understand that in the event that I accept your plea the only thing that remains to be is to pass sentence and that includes a sentence of years to a state penal institution[?] In this case that could be a maximum sentence of life imprisonment without parole, or life imprisonment with parole eligibility after serving twenty (20) years of imprisonment; or life imprisonment with parole eligibility after serving twenty-five (25) year fully years of imprisonment; or life imprisonment with parole eligibility after

> serving thirty (30) full years of imprisonment and addition[ally] the Court may impose a maximum fine of twenty-five thousand dollars ($25,000). Do you understand these possible sentences?
>
> CHAD D. PHILLIPS: Yes, sir. Change of Plea Hearing Tr., p. 7.

This exchange plainly shows that Phillips was aware that his guilty plea necessitated that he serve a term of life imprisonment. Under *Brown*'s guidance, Phillips' knowledge of his mandatory prison term also created an understanding that he was ineligible for community control sanctions. *Brown,* 2004-Ohio-1843 at ¶ 13; *see also State v. Thomas*, 8th Dist. No. 94788, 2011-Ohio-214, ¶ 25 (finding no prejudicial error for trial court's failure to inform the defendant of community control sanctions because the trial court discussed maximum penalty for offense); *State v. Byrd*, 178 Ohio App.3d 646, 2008-Ohio-5515, ¶ 30 (2d Dist.) (finding that the trial court does not have to inform the defendant of lack of eligibility for judicial release unless there is a misstatement or misrepresentation that puts the trial court on notice that the defendant does not understand this fact).

{¶30} Since the trial court informed Phillips that he had to serve a life prison term, we find that Phillips was aware that he was ineligible for community control sanctions and probation and that the trial court substantially complied with the dictates of Crim.R. 11(C)(2). Consequently, the trial court's failure to explicitly inform Phillips of his lack of eligibility does not constitute reversible error.

*Insanity Defense*

**{¶31}** It is well-settled that there is no requirement under Crim.R. 11(C)(2) that trial courts apprise defendants of available defenses when accepting a change of plea. *See, e.g.*, *State v. Reynolds*, 40 Ohio St.3d 334 (1988), syllabus (finding that trial court did not have to inform criminal defendant of statutorily enumerated affirmative defenses); *State v. Ingram*, 7th Dist. No. 09MA98, 2010-Ohio-1093, ¶ 22 (finding that trial court did not err when failing to inform defendant of insanity defense). Phillips seeks for us to disregard this well-settled law and erroneously relies on *State v. Dickey*, 15 Ohio App.3d 151 (8th Dist. 1984), to support his contention. There, the Eighth District Court of Appeals reversed a concealed weapon conviction because the trial court failed to inform the defendant of the affirmative defenses provided for in R.C. 2923.12(C). *Id.* at syllabus and 152.

**{¶32}** However, the Ohio Supreme Court's ruling in *Reynolds* directly contradicts *Dickey*. In *Reynolds*, the Court found that trial courts had no duty to inform defendants of the affirmative defenses included in R.C. 2923.12(C). *Reynolds* at syllabus. Based on *Reynolds*, the holding in *Dickey* is no longer good law and we consequently reject Phillips' argument that a trial court must inform a defendant of the insanity defense. As such, we follow *Reynolds* and find that the trial court did not err when it failed to inform Phillips of the insanity defense.

**{¶33}** We also note that it appears from the record that the trial court did at least cursorily discuss the affirmative defense of insanity during the plea colloquy. The colloquy includes the following exchange:

> <u>THE COURT:</u> Do you understand that by pleading guilty you waive, that is, give up your right to have jury or court trial on your plea of not guilty and not guilty by reason of insanity[?]
>
> * * *
>
> <u>CHAD D. PHILLIPS:</u> Yes, sir.  Change of Plea Hearing Tr., p. 5.

This exchange displays that Phillips understood that he had entered a plea of not guilty by reason of insanity and that he knowingly, intelligently, and voluntarily withdrew this plea in favor of a guilty plea.

**{¶34}** Accordingly, Phillips' ninth, tenth, and eleventh assignments of error are overruled.

**{¶35}** Having found no error prejudicial to Phillips, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**