[Cite as *State v. Stiltner*, 2022-Ohio-290.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2021 CA 0023 |
| KYLE STILTNER | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |


CHARACTER OF PROCEEDING:     Criminal appeal from the Richland County
Court of Common Pleas, Case No. 2020-
CR-0278


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     February 1, 2022

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

GARY BISHOP                              STEVEN BILLING
Prosecuting Attorney                     Box 1671
By: VICTORIA MUNSON                      Columbus, OH 43215
Assistant Prosecutor
38 South Park Street
Mansfield, OH 44902

*Gwin, P.J.*

{¶1}   Appellant Kyle Stiltner appeals from the March 31, 2021 judgment entry of the Richland County Court of Common Pleas.  Appellee is the State of Ohio.

*Facts & Procedural History*

{¶2}   On April 9, 2020, appellant was charged with felonious assault, a felony of the second degree, in Mansfield Municipal Court.  The municipal court held a preliminary hearing on April 30, 2020.   Based upon the testimony and evidence provided, the municipal court judge found probable cause, and bound the case over to Richland County Court of Common Pleas for consideration by the grand jury.  When the parties were discussing bond, counsel for appellant argued against increased bond.  The prosecutor asked for increased bond since the incident was a shooting.  The prosecutor stated, "initially there was some speculation that there might be a self-defense claim * * * that claim, if there is one, is significantly weakened" after the testimony at the preliminary hearing.

{¶3}   On May 11, 2020, the grand jury indicted appellant and charged him with the following:  attempted murder, a felony of the first degree (Count 1) with a firearm specification; felonious assault, a felony of the second degree (Count 2) with a firearm specification; felonious assault, a felony of the second degree (Count 3) with a firearm specification; having weapons under disability, a felony of the third degree (Count 4); possession of heroin, a felony of the fourth degree (Count 5); possession of a fentanyl-related compound, a felony of the fourth degree (Count 6); possession of cocaine, a felony of the fifth degree (Count 7); aggravated possession of drugs, a felony of the fifth degree

(Count 8); possession of drugs, buprenorphine, a felony of the fifth degree (Count 9); and possession of drugs, diazepam, a felony of the fifth degree (Count 10).

{¶4} The trial court held a change of plea and sentencing hearing on March 26, 2021. Appellee offered appellant a plea agreement, which appellant accepted. In exchange for his plea of guilty to the remaining charges, appellee agreed to dismiss Counts 1 and 3.

{¶5} The trial court initially asked appellant several questions. Appellant stated he graduated from high school, did not have any trouble with reading, writing, or understanding English, and did not have anything in jail that would cause him problems with clear thinking. Appellant confirmed he was satisfied with his attorney. Counsel for appellant stated he was satisfied that appellant was making a knowing, voluntary, and intelligent plea.

{¶6} The trial court then went through appellant's rights, as follows: appellant could have a trial to the court or a jury trial; appellant was presumed innocent; the prosecutor must prove his guilt beyond a reasonable doubt; appellant had the right to confront witnesses and his attorney had the right to cross-examine witnesses; appellant had the right to subpoena witnesses for trial; and appellant had the right not to testify at trial, which could not be used against him. Appellant confirmed he understood he was giving up these rights by entering a plea.

{¶7} The trial court then reviewed the maximum penalty for the charges and informed appellant: Count 2 (felonious assault) is a second-degree felony that carries the presumption of prison with a maximum prison term of eight to twelve years, a $15,000 fine, and three years of post-release control; Count 4 (weapons under disability) is a third-

degree felony with a maximum prison term of thirty-six months in prison, $10,000 fine, and three year discretionary post-release control; Counts 5 and 6 (possession of heroin and possession of fentanyl) are fourth-degree felonies with maximum prison terms of eighteen months each, $5,000 fines on each, three years of option post-release control on each, and optional driver's license suspension from six months to five years on each count; Counts 7, 8, 9, and 10 (possession of cocaine, possession of methamphetamine, possession of buprenorphine, and possession of diazepam) are fifth-degree felonies, each with a maximum prison term of twelve months, $2,500 fine, and three years discretionary post-release control. The trial court stated these could all be run consecutive to each other, but that the trial court would not run them all consecutively. Appellant confirmed he understood the maximum penalties as described above.

{¶8} The trial court specifically told appellant that Count 2 carried a mandatory three-year firearm specification and explained, "that means if you plead to that count and that specification, you have to do three years mandatory and consecutive, and you do that first before you start to serve the sentence on the felonious assault." Appellant stated he understood.

{¶9} The court briefly reviewed the facts of the case with appellant, stating the charges were the result of an incident on April 7, 2020, when the victim was shot in the arm and the stomach after an altercation between the victim, Mr. Burkhart, and appellant at the Backroom Bar and Grill in Mansfield, Ohio. Further, there were drugs located in a black box that appellant had possession of. The court inquired if appellant understood what he was accused of doing and appellant responded, "yes, sir."

{¶10} At this point, the trial court asked appellant if he had any other questions. Appellant stated he did. However, the question by appellant was inaudible in the transcript. It appears from the trial court's response that appellant was asking whether the victim and Mr. Burkhart were going to be charged as a result of the April 7, 2020 incident. The trial court informed appellant that it was up to the prosecutor to determine who gets charged and who does not, and, if appellant felt others should be charged for their involvement, appellant could attempt to contact the prosecutor.

{¶11} Counsel for appellee explained he was present at the preliminary hearing and that the victim admitted to coming after appellant with his vehicle after appellant shot him. Counsel for appellee stated, "it looks like that would have been in self-defense * * * after being shot at by appellant," and, "as far as his preliminary testimony, it seemed to be, at most, in self-defense." The trial judge told appellant, "they're indicating that they think that what they have right now against [the victim] isn't sufficient to charge him with anything. That's what they're saying." The trial court then asked appellant if he had any other questions, and appellant responded, "no, sir."

{¶12} Appellant stated he wanted to plead no contest, and signed the plea form in front of the trial judge. The trial court informed appellant that a no contest plea is an admission of the charges, "you're admitting, that, yeah, I had the gun, I shot the gun, I wasn't allowed to have the gun, and I wasn't allowed to have these drugs and I had these drugs. Is that all true?" Appellant responded, "yes, sir."

{¶13} Based on appellant's representations, the trial court accepted his no contest plea, finding appellant's plea was knowing, voluntary, and intelligent.

{¶14} The trial court imposed the agreed-upon sentence pursuant to the negotiated plea between appellant and appellee, which was:  seven to ten-and-one-half years on Count 2 with three years for the firearm specification, thirty-six months on Count 4, and twelve months on Counts 5 through 10.  The court found the sentence for Counts 4 through 10 should be served concurrent with the sentence on Count 2, for a total prison term of seven to ten-and-one-half years, plus three years for the firearm specification.

{¶15}  Appellant and his counsel signed an "admission of guilt" form on March 26, 2021, stating he wished to plead no contest to Counts 2, 4, 5, 6, 7, 8, 9, and 10, while Counts 1 and 3 were dismissed.  The admission of guilt form stated appellant understood the maximum sentence of twenty-one years, with three years being mandatory.  Further, that he was satisfied with his attorney's advice and competence; that he was not under the influence of drugs or alcohol; and that no threats had been made.  The form specifically enumerates the rights appellant was giving up by pleading guilty, including:  the right to a jury or court trial, the right to have his attorney question witnesses against him, the right to use the power of the court to call witnesses to testify for him, the right to not take the witness stand, and the right to have the prosecutor prove his guilt beyond a reasonable doubt.  Finally, the form provides, "I understand the nature of these charges and the possible defenses I might have."

{¶16}  The trial court issued a judgment entry of conviction and sentencing entry on March 31, 2021.

{¶17}  Appellant appeals the March 31, 2021 judgment entry of the Richland County Court of Common Pleas and assigns the following as error:

{¶18} "I.    THE TRIAL COURT COMMITTED ERROR IN ACCEPTING APPELLANT'S CHANGE OF PLEA WITHOUT INFORMING DEFENDANT OF HIS WAIVER OF ASSERTING AFFIRMATIVE DEFENSES."

I.

{¶19} Appellant contends his plea was not knowing, voluntary, or intelligent because the trial court did not inform him that his plea would forfeit his right to assert the affirmative defense of self-defense.    Appellant cites the prosecutor's statement at the preliminary hearing with regards to bond in support of his argument that self-defense was an issue beginning early on in the case.

{¶20} We disagree with appellant.

{¶21} This issue is controlled by *State v. Reynolds*, 40 Ohio St.3d 334, 533 N.E.2d 342 (1988), in which the Ohio Supreme Court held that, where a criminal defendant is represented by counsel, a trial court is not required to apprise a pleading defendant of the availability of defenses, even in circumstances where the same statute that defines the offense defines various affirmative defenses.    The Court stated, "where a criminal defendant [is] represented by counsel * * *, the trial court is not required, pursuant to Crim.R. 11(C), to apprise him of affirmative defenses * * * prior to accepting his plea." *Id.*

{¶22} Numerous courts have followed the holding of the Ohio Supreme Court in *Reynolds.   State v. Gardner*, 3rd Dist. Union No. 14-02-18, 14-02-19, 2003-Ohio-1598 (trial court was not required to inform defendant that pleading guilty would forfeit his right to assert the affirmative defense of self-defense); *State v. Phillips*, 3rd Dist. Van Wert No. 15-12-02, 2012-Ohio-5950 ("it is well-settled that there is no requirement under Crim.R. 11(C)(2) that trial courts apprise defendants of available defenses when accepting a

change of plea"); *State v. Albright,* 8th Dist. Cuyahoga No. 107632, 2019-Ohio-1998 (trial court is not required to apprise a defendant of available affirmative defenses prior to accepting a plea or inform a defendant that a plea will waive any such defenses); *State v. McIntosh*, 8th Dist. Cuyahoga No. 93714, 2010-Ohio-6471 (issue of whether a trial court has to inquire into whether the defendant understood the nature of the affirmative defense of self-defense is controlled by *Reynolds*); *State v. Cooke*, 8th Dist. Cuyahoga No. 108824, 2020-Ohio-2725 (where a criminal defendant is represented by counsel, Criminal Rule 11(C) does not require trial courts to inform defendants of affirmative defense that may be available to them prior to accepting their pleas); *State v. Ferdinandsen*, 3rd Dist. Hancock No. 5-16-08, 2016-Ohio-7172 (overruling defendant's argument that his Criminal Rule 11 hearing was inadequate because the trial court did not advise him that he was waiving his self-defense claim);  *State v. Young*, 10th Dist. Franklin No. 10AP-292, 2010-Ohio-5873 (Criminal Rule 11(C)(2) does not require that a trial court advise a defendant concerning all existing affirmative defenses or make a determination that the defendant is aware of the available defenses); *State v. Griffey*, 11th Dist. Portage No. 2009-P-0077, 2010-Ohio-6573 (overruling the defendant's argument that his plea was invalid because the trial court failed to explain to him his potential affirmative defenses).

{¶23} In this case, appellant was represented by counsel.  Thus, pursuant to *Reynolds*, Criminal Rule 11 did not require the trial court to inform appellant that the affirmative defense of self-defense may be available to him prior to accepting his plea.

{¶24} Trial courts must strictly comply with the provisions concerning constitutional rights set forth in Criminal Rule 11(C)(2).  However, appellant's argument concerning the trial court's failure to discuss the affirmative defense of self-defense does

not implicate the constitutional rights enumerated in Criminal Rule 11(C)(2). As such, this Court only needs to review whether the trial court substantially complied with the provisions concerning non-constitutional rights set forth in Criminal Rule 11. *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51. Under the substantial-compliance standard, we review the totality of the circumstances surrounding the defendant's plea and determine whether the defendant subjectively understood the effect of the plea. *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224.

{¶25} Based upon the totality of the circumstances, we find appellant entered his plea knowingly, intelligently, and voluntarily, and that the trial court properly determined as much through a meaningful colloquy with appellant. Prior to accepting appellant's plea, the trial court held a hearing and engaged in a colloquy regarding appellant's understanding of the nature of the charges, the potential penalties, the consequences of the plea agreement, and his constitutional rights. The court ensured appellant was not under the influence of alcohol or drugs, that he did not have any trouble with reading, writing, or understanding English, and that he was satisfied with his counsel's representation. The court then advised appellant of the charges, including the maximum possible penalty for each offense. Appellant indicated he understood the court's explanation.

{¶26} Thereafter, the trial court advised appellant of his constitutional rights, including the right to a trial, the presumption of innocence, the right to confront witnesses and have his attorney cross-examine witnesses, the right to subpoena witnesses, the right to not testify at trial, and the fact that the prosecutor must prove his guilt beyond a reasonable doubt. Appellant stated he understood the court's advisement.

{¶27}  Additionally, appellant and his counsel signed an "admission of guilt" form stating he wished to plead no contest to Counts 2, 4, 5, 6, 7, 8, 9, and 10, while Counts 1 and 3 were dismissed.  The form specifically states, "I understand the nature of these charges and the possible defenses I might have."  Not only did the plea form indicate review with defense counsel, but appellant in open court admitted he reviewed the document with his attorney and understood it.  Counsel for appellant stated he was satisfied that appellant was making a knowing, voluntary, and intelligent plea.

{¶28}  Appellant did ask the trial court during the plea colloquy whether the victim or Mr. Burkhart were going to be charged as a result of the incident.  Counsel for appellee, who was present at the preliminary hearing, stated any actions by the victim after the shooting were done in self-defenses.  The trial court explained to appellant that the prosecutor was indicating there was not sufficient evidence to charge the victim with anything.  However, subsequent to this question by appellant, appellant then stated he had no further questions, signed the plea form, and stated he wanted to enter a no contest plea.  After appellant's questions about others being charged as a result of the incident, the trial court confirmed with appellant that, "you're admitting that, yeah, I had the gun, I shot the gun, I wasn't allowed to have the gun, and I wasn't allowed to have these drugs and I had these drugs."  Appellant responded, "yes, sir."  Further, during the plea hearing, counsel for appellant specifically stated he and appellant discussed what appellant's possible defenses might be, and that appellant discussed with counsel the victim's involvement in the case (T. at 16).

{¶29}  Additionally, a defendant who challenges a plea on a non-constitutional basis must demonstrate a prejudicial effect.  *State v. Veney*, 120 Ohio St.3d 176, 2008-

Ohio-5200, 897 N.E.2d 621. The test for prejudice is "whether the plea would have otherwise been made." *State v. Nero,* 56 Ohio St.3d 106, 564 N.E.2d 474 (1990). Appellant has not demonstrated that he would not have entered a plea had he been more thoroughly advised by the court regarding his non-constitutional rights. See *State v. Young,* 10th Dist. Franklin No. 10AP-292, 2010-Ohio-5873. Thus, we find no evidence appellant was prejudiced and he does not point to any such evidence.

{¶30} Based on the foregoing, we find the trial court complied with Criminal Rule 11. Therefore, appellant's assignment of error is overruled.

{¶31} The March 31, 2021 judgment entry of the Richland County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Wise, John, J., and

Baldwin, J., concur